# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| NORA WILLIAMS,<br><br>                Plaintiff,<br><br>   v.<br><br>RICHARD V. SPENCER, Secretary of the Navy,<br><br>                Defendant. | CASE NO. C16-5945 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Richard Spencer's, Secretary of the Navy, ("Navy") motion for summary judgment. Dkt. 20. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On November 10, 2016, Plaintiff Nora Williams ("Williams") filed a complaint against the Navy asserting claims for denial of reasonable accommodation, hostile work environment, and retaliation. Dkt. 1. On January 11 and May 27, 2017, Williams filed amended complaints asserting similar claims. Dkts. 5, 14.

On June 7, 2018, the Navy filed a motion for summary judgment. Dkt. 20. On July 3, 2018, Williams responded. Dkt. 30. On July 5, 2018, Williams filed a third amended complaint upon consent of the Navy and the Court. Dkt. 32. Williams asserted that she had inadvertently cited to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), instead of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. ("Rehabilitation Act"). *Id.* On August 3, 2018, the Navy replied. Dkt. 35.

## II. FACTUAL BACKGROUND

During the relevant period, Williams was employed as a civilian employee by the Department of the Navy, Naval Facilities Engineering Command ("NAVFAC") as a contract specialist at the Bremerton Naval Facility. In January and May 2014, Williams experienced two disturbing occurrences in the workplace. In the first incident, a co-worker referred to as CM made a punching gesture towards Williams, stopping his fist just inches from her face. After an investigation, management told CM to stay away from Williams, which CM complied with except for one work-related interaction that did not seem to distress Williams. In the second incident, a male co-worker slapped her buttocks. After an investigation, management imposed a two-week suspension on the co-worker. Williams had no further contact with this co-worker.

In July 2014, Williams began to experience anxiety attacks as a result of the incidents and submitted a request for a reasonable accommodation ("RA"). On December 31, 2014, Williams and NAVFAC's Deputy Equal Employment Opportunity Officer, Kevin Kirkpatrick ("Kirkpatrick"), agreed to the RA of Williams teleworking on a full-time basis. Dkt. 23-3, ¶ 3. Kirkpatrick required Williams to come into the office at

least once a pay period and for in-person meetings. *Id.* The RA was to be "evaluated and revisited in three months to determine its effectiveness." *Id.* ¶ 4. While the parties were negotiating the RA, Williams took an extended leave of absence. Williams returned from her leave of absence on January 7, 2015. Dkt. 23, Declaration of Kevin Kirkpatrick, ¶ 3.

In May 2016, LeRoy Rushing ("Rushing") replaced Jim Niles as Williams' first line supervisor. Dkt. 25, Declaration of LeRoy Rushing ("Rushing Dec."), ¶ 2. On May 4, 2016, Roy sent an email regarding work issues with the team and included a requirement that telework and overtime employees provide a more detailed list of their completed work. Dkt. 31-3 at 2. Williams did not immediately object to this new timekeeping requirement. Rushing Dec., ¶ 3. On May 9, 2016, Rushing informed Williams that "the requirement to review her RA had expired and it needed to be revisited." *Id.* ¶ 3. Williams filed an Equal Employment Opportunity ("EEO") complaint alleging that Rushing's actions constituted a denial of her RA. Dkt. 31-5

On May 10, 2016, Williams emailed Charles Monie ("Monie"), a supervisor above Rushing, stating that her RA had been terminated and asking for an explanation why this had happened. Dkt. 31-4 at 2–3. Williams copied Rushing on the email, and Rushing responded that Williams needed to bring the issue to him as her direct supervisor before contacting supervisors up the chain of command. *Id.* He also denied that he said the RA was terminated and clarified that the RA had expired and that he and the RA specialist needed to revisit it. *Id.* Monie eventually informed Rushing that Monie was an appropriate person for Williams to contact regarding issues with her RA and that, absent some indication that a RA is not working, there is no reason to review the RA. Dkt. 31-

19 at 11–18 (ECF pagination). Moreover, in regard to Williams's concerns, the Navy decided to postpone any review of the RA because Rushing and Williams's team was entering the busy part of the year for their work. Rushing Dec., ¶ 2.

On August 11, 2016, the Navy informed Williams that she would be interviewed as part of an official administrative investigation. Dkt. 31-9. The interviewer was Samuel Vitaro ("Vitaro"), and the investigation was based on allegations of Williams's misconduct as follows:

> a. Recording conversations in the workplace via a video/audio recording device.
> b. Making the statement to co-workers regarding "second amendment solutions" and other comments concerning her concealed carry firearms permit and her concerns that she cannot bring a firearm to work.
> c. Discussing issues such as Reasonable Accommodation, Equal Employment Opportunity cases, and conflicts with management with coworkers to the extent it has been disruptive.

*Id.* at 2. The Navy refused to allow Williams to have an attorney present during her interview.

On August 25, 2016, Williams filed another EEO complaint alleging four violations of her rights. She alleged a denial of her RA because of Rushing's time-keeping requirements and because, under those requirements, she was directed to come into work under "emergency" circumstances more than the RA allowed. Dkt. 31-11 at 5. She alleged retaliation in the form of (1) the official investigation, (2) Vitaro subjecting her to disability and sexual harassment during his interview, (3) Rushing engaging in adverse employment actions by assigning work that was already overdue, and (4) supervisors failing to take action to stop ongoing harassment. *Id.* She alleged age

discrimination by Rushing in that he (1) stated that older workers should just retire and (2) he reviewed older workers' work with increased scrutiny. *Id.* at 5–6. Finally, she alleged ongoing retaliation because of her prior EEO activity. *Id.* at 6.

Williams contends that her anxiety worsened during the next couple of months. On October 13, 2016, Williams wrote her second level supervisor, Lieutenant Commander William Pitcairn, requesting disability retirement and asking him to complete the appropriate paperwork. Dkt. 26, Declaration of William Pitcairn, ¶ 4. On October 20, 2016, Williams requested two weeks of sick leave that was approved. *Id.* On October 26, 2016, Williams requested leave under the Family and Medical Leave Act ("FMLA") that was also approved. *Id.* On October 31, 2016, Williams submitted the FMLA paperwork and indicated a return date of January 1, 2017. *Id.*; Dkt. 31-16 at 2–6. As her return date approached, Williams submitted a letter from her psychologist stating that returning to work, even under the terms of the RA, would exacerbate her medical issues and severely impact her ability to complete her work. Dkt. 31-16 at 7. Williams did not return to work at the end of her FMLA leave. Instead, she exhausted her sick and annual leave and then entered leave without pay status. Dkt. 21, ¶ 2.

On February 10, 2017, Pitcairn issued Williams a letter of caution based on Vitaro's investigation. Dkt. 31-13. The letter provides in relevant part as follows:

> I have reviewed the investigative report and concur with the findings. I conclude that the inappropriate conduct described above has disrupted the workplace and had an adverse effect on the work environment. Accordingly, you are hereby put on notice that making statements about guns being brought into the workplace and wearing or bringing a video/audio recording device in the workplace to record conversation, or to use as a deterrent, is disruptive and causes a chilling

effect to the workplace. Also, discussing personal matters to include conflicts that you have with co-workers and management is disruptive and unwelcome. The statements and behaviors that you have demonstrated have the potential to cause your co-workers concern or otherwise disrupt the workplace. Please refer to enclosure (1), the Naval Facilities Engineering Command, Northwest Code of Conduct for expected behavior in the workspace.

I hereby put you on notice the behaviors identified above are disruptive and inappropriate and will not be tolerated. If further infractions of these types of behavior continue it could lead to more severe corrective action.

This letter of caution will not be made a matter of record in your Official Personnel Folder, but will be retained by the Agency. Although it will not be counted as a prior offense when determining a remedy for any future offense under the Guideline Schedule of Disciplinary Offenses and Recommended Remedies, it may be counted as a factor in determining the appropriate remedy for a first, second, or third offense from a range of possible remedies

This letter is not grievable per Article 20, of reference (a), nor appealable to the Merit Systems Protection Board under 5 CFR 752.301 or 752.401.

*Id.* at 4–5.

On February 14, 2017, Williams's psychologist wrote another letter opining that he agreed with her decision to apply for disability retirement and that it would be inadvisable for Williams to return to work under any circumstances. Dkt. 31-16 at 8. In March 2018, Williams's disability retirement paperwork was completed and she formally retired.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     Reasonable Accommodation**

Although Williams argues that the Navy denied her a RA, she fails to clearly articulate how this denial occurred. *See* Dkt. 30 at 10–13. In fact, Williams concedes that the Navy provided her a RA. *Id.* at 10 ("Williams and the [Navy] went through the reasonable accommodation process and agreed to a reasonable accommodation."). Thus, Williams's real argument is that "the reasonable accommodation was violated." *Id.* at 11. As the Navy asserts, Williams "offers no legal support for her argument that a subsequent supervisor's different construction of the terms of a reasonable accommodation agreement constitutes a denial of her reasonable accommodation." Dkt. 35 at 3. At most, Rushing altered the terms of the existing RA, but Williams fails to show that such alterations result in liability. On this issue, "the duty to accommodate 'is a continuing duty . . . .'" *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) (quoting *McAlindin v. Cty. of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000)). Both sides have the continuing obligation to communicate and engage in good faith negotiation to determine an accommodation that works for the employee and the employer. *Humphrey*, 239 F.3d at 1138.

Under these standards, Williams fails to show any violation of the Navy's duty to accommodate. It is undisputed that Rushing imposed additional time keeping requirements and/or work tracking requirements. The initially agreed upon RA, however,

explicitly included such daily activity tracking. *See* Dkt. 23-3 at ¶ 4 (Williams required to provide "a short bulleted statement each day of the significant actions worked on such as BCM's, project milestones accomplished, training, significant correspondence, RFl's, PPl's; as well as an explanation of any variations to your normal work hours - travel time to and from the office, etc."). The fact that Rushing required the statement in a different format or with more extensive documentation than Williams's previous supervisor does not amount to a denial of her RA. Instead, it triggered her duty to communicate that the requirement was unreasonable or impeded her ability to complete her required work, which would have initiated the interactive process to reach an agreement on this issue. Rushing imposed the new requirements in May 2016, and Williams gave formal notice that the requirements were burdensome in late August 2016. Williams then went on leave approximately five weeks later and never returned to work. If anything, Williams failed to engage in good faith negotiations with the Navy to reach an amicable accommodation. Regardless, Williams fails to show that Rushing's increased reporting requirements or the Navy's response once Williams formally objected to these requirements violated her rights in any way. Therefore, the Court grants the Navy's motion on this issue.

Likewise, Williams fails to show that Rushing's alleged overuse of the provision requiring her to come to the office resulted in a denial of her RA. Once she formally put the Navy on notice of her displeasure, she failed to engage in any process to alter her RA. Therefore, the Court grants the Navy's motion on Williams's failure to accommodate claim.

## C. Retaliation

The ADA and ADA case law provide the substantive law for Rehabilitation Act claims. *See, e.g., Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1996) (citing 29 U.S.C. § 791(g)). Retaliation claims under the Rehabilitation Act are subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). Under that framework, an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of retaliation. *Id.* The burden then shifts to the employer to provide a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual. *Id.*

To show a prima facie case of disparate treatment under the Rehabilitation Act, Williams must show that, within the meaning of the statute, she: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of her disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). Regarding the adverse employment action, Williams must show that the complained-of action "materially" affected a term of her employment. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Regarding causation, Williams must show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the [defendant]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (adopting the *Nassar* but-for causation standard for ADA retaliation claims).

In this case, Williams fails to establish a prima facie case of retaliation. She argues that the Vitaro investigation and the Letter of Caution were adverse employment actions caused by her disability and/or request for an RA. Dkt. 30 at 14–20. Regarding the investigation, Williams ignores binding case law to the contrary. *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1023 (9th Cir. 2018) (employer has an obligation to investigate "credible allegations of misconduct"). At the very least, Williams fails to show that retaliation was the but-for cause of the investigation, because Pitcairn initiated the investigation based on co-workers' complaints that Williams was engaging in disruptive and inappropriate behavior. Dkt. 13-3 at 4.

Similarly, Williams fails to establish that the Letter of Caution was an adverse employment action or was caused by her protected activities. Williams argues that a "warning letter or negative review also can be considered an adverse employment action." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). Although the Letter of Caution could be considered a warning letter, Williams fails to show how this letter materially affected a condition of her employment. Not only was the letter issued when Williams was on leave that ultimately became retirement, but the letter also was not placed in her personnel file and did not count as a prior offense for any subsequent action. Moreover, Williams fails to establish that retaliation was the but-for cause of the letter, which was drafted on an independent third-party investigator's recommendation that the Navy counsel Williams on the disruptiveness of her actions. Therefore, the Court concludes that Williams fails to establish a prima facie case of retaliation.

1 | Even if Williams had met her burden at the initial step, the Navy meets its burden and Williams fails to establish pretext. The Navy submits facts to establish that the investigation was initiated by co-workers' complaints, which is a legitimate, non-retaliatory reason for the action. Similarly, Pitcairn drafted the letter based on Vitaro's recommendation to counsel Williams regarding her actions. In return, Williams fails to submit any evidence to establish pretext. Instead, she argues that the external investigation and its cost of $56,000 is sufficient to establish pretext. Dkt. 20–21. Her arguments are unpersuasive because these facts do not show that the Navy's "proffered explanation is unworthy of credence." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Accordingly, Williams's retaliation claim fails for numerous reasons.

**D.     Hostile Work Environment**

Williams refers to a hostile work environment throughout her argument regarding retaliation. *See* Dkt. 30 at 14–22. Williams, however, fails to cite any authority for the proposition that a hostile work environment in general is any part of a retaliation claim. While it is true that certain adverse actions could support both a retaliation claim and a hostile work environment claim, Williams has failed to show any other overlap between such claims. To the extent that Williams asserts a hostile work environment claim, the Navy is entitled to judgment on this claim because Williams has failed to establish actions so severe or pervasive as to alter the conditions of her employment or create an abusive work environment. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004).

## IV. ORDER

Therefore, it is hereby **ORDERED** that Navy's motion for summary judgment, Dkt. 20, is **GRANTED**. The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 19th day of October, 2018.

BENJAMIN H. SETTLE
United States District Judge